**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **Bankr. No. 13-70150-JAD** |
| **SUZAN ANN MOORE,** | ) | |
| | ) | |
| | ) | **Chapter 7** |
| **Debtor.** | ) | |
| ————————————————X | | |
| | ) | **Adv. No. 13-07023-JAD** |
| **SUZAN ANN MOORE,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Related to Dkt. #57** |
| - v- | ) | |
| | ) | |
| **LANE M. LALONE,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |
| ————————————————X | | |

<u>**MEMORANDUM OPINION**</u>

The matter before the Court is a motion filed by the Debtor-Plaintiff, titled as a "Request for New Hearing and Objection to Entrance of Judgment" (the "Motion for Relief"). The genesis of the Motion for Relief is the failure of the Plaintiff and her legal counsel to appear at the duly scheduled trial of this Adversary Proceeding, and the Debtor-Plaintiff's discontent with an adverse judgment resulting from her failure to prosecute this matter.

The Motion for Relief is a core matter over which this Court has the requisite subject-matter jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(E), 157(b)(2)(O), and 1334(b). By the Motion for Relief, the Plaintiff

00016039

essentially seeks to have this Court set aside its January 20, 2015 Order dismissing the Debtor-Plaintiff's adversary complaint (the "Dismissal Order").

For the reasons set forth below, the Court shall enter an Order that (a) vacates the Dismissal Order, and (b) schedules a trial on the Plaintiff-Debtor's adversary complaint.

In addition, because counsel for the Plaintiff willfully ignored Orders of this Court and has otherwise egregiously failed to adequately represent the Plaintiff in this bankruptcy case (thereby causing unnecessary delay, burden, and expense), the Court shall separately issue an Order to Show Cause as to why Plaintiff's counsel should not be subject to monetary sanctions (beyond the reprimand set forth in this Memorandum Opinion).

## I.

On March 1, 2013, Suzan Ann Moore (interchangeably referred to herein as: "Ms. Moore", or the "Debtor," or the "Plaintiff," or the "Debtor-Plaintiff") commenced this bankruptcy case by filing a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code. At all times relevant hereto, Ms. Moore was represented by legal counsel- Paul Mentzer, Esq. The events that precipitated her bankruptcy apparently stem from a landlord-tenant dispute between Ms. Moore and her former landlord, Lane M. Lalone (who is the Defendant in this matter).

After the filing of her bankruptcy petition, Ms. Moore sought to recover property allegedly seized by Mr. Lalone. Specifically, on March 7, 2013, Ms.

Moore filed with the Court a motion styled as a "Motion to Return Exempt Property."[1]  By Order of the Court dated March 12, 2013, Ms. Moore was informed that the relief requested by her "Motion to Return Exempt Property" must be sought through a formal civil action before this Court.[2]

On March 12, 2013, Ms. Moore proceeded to file her "Motion to Return Exempt Property" at Adversary Proceeding No. 13-07006-JAD.  Since the filing was deficient in that there was, among other deficiencies, no adversary caption to the pleading (i.e., no plaintiff was identified and no defendant was identified), a request for corrective action was entered on the Court's docket.  The corrective entry requested that the Plaintiff cure the deficiencies by way of an amended complaint.  Mr. Mentzer ignored the request for corrective action, and an Order dated March 22, 2013 was further entered by the Court that directed counsel to correct the deficiencies by April 2, 2013 or face dismissal of the action.

Counsel did not correct the deficiencies, but instead re-filed a substantially similar deficient pleading on March 28, 2013.  As a result, Adversary Proceeding No. 13-07006-JAD was dismissed without prejudice by way of an Order of the Court dated April 2, 2013.

---

[1] The docket text for the filing reads "Motion for an Order to return Exempt Property to Debtor." The pleading itself is captioned "Motion to Recover Exempt Property from Creditor that holds the property." Hereinafter, the pleading shall be referred to as "Motion to Return Property."

[2] Fed.R.Bankr.P. 7001(1) requires actions to recover property to be commenced by way of an adversary proceeding, as opposed to motion practice.

On July 11, 2013, Ms. Moore filed the instant Adversary Proceeding against Mr. Lalone at Adversary No. 13-07023-JAD. The gravamen of the complaint is that Mr. Lalone had obtained a judgment within 90 days prior to the bankruptcy filing, that Mr. Lalone evicted Ms. Moore from her leasehold in connection with such proceedings, that Mr. Lalone was holding Ms. Moore's personal property, that Ms. Moore retained an exempt interest in the personal property, that Ms. Moore requested the return of the property, that Mr. Lalone refused to release the personal property to Ms. Moore, and that, given Mr. Lalone's refusals, Ms. Moore desired an entry of an order compelling Mr. Lalone to return the property.

Ultimately, a January 15, 2015 (at 1:30 p.m.) trial date was set for the complaint. By Order dated December 31, 2014 (the "Rescheduling Order"), which was contemporaneously served via electronically on all counsel of record, the trial date was continued to January 16, 2015 at 10:00 a.m.

Prior to the January 16, 2015 trial date, no one objected to the short continuance. Despite being served with the Rescheduling Order, no one advised the Court that Plaintiff's counsel could not appear at the trial. In addition, no one advised the Court that any party or witness could not appear at the trial. As a result, the trial remained on the calendar, and was duly called by the Court on January 16, 2015 at 10:00 a.m. At the January 16, 2015 trial, defense counsel appeared and so did the Defendant, Mr. Lalone.

However, neither the Plaintiff nor her counsel, Mr. Mentzer, appeared at the trial.

Not only did the Plaintiff and her counsel not appear at the trial, the Plaintiff filed no proposed exhibits in advance of the trial; nor did the Plaintiff or counsel file any pretrial memoranda or statements in support of the relief they requested (even though the Court's original trial order required that such documents be filed at least fourteen (14) days prior to the trial). Thus, the Court was left to conduct a trial without the Plaintiff who bore the burden of proof in these matters.

Since the Court has no duty to rummage the file for the Plaintiff, and since the Court has no duty to raise legal arguments not asserted by a litigant, the Court was left to essentially hold that the Plaintiff both failed to prosecute this action and failed to meet her burden of proof. As a result, the Dismissal Order was entered by the Court.

Unsatisfied with this result, the Plaintiff filed her Motion for Relief. The Motion for Relief fails to expressly request that the Dismissal Order be vacated or otherwise be set aside. Instead, the Motion for Relief devotes most of its prose to a dissertation of Pennsylvania's Landlord and Tenant Act, and asks that the Court "grant [Ms. Moore] a hearing OR after review of the law grant her the right to recovery of her personal property."

On February 26, 2015, the Court held a hearing on the Motion for Relief. At the hearing, the Court asked Plaintiff's counsel– Mr. Mentzer– to identify any

rule or case law upon which Mr. Mentzer relied in seeking the relief requested by his motion.   Mr. Mentzer was unable to cite any specific legal support for the Motion for Relief, other than a turbid appeal to fairness and justice.   It is therefore in the absence of any legal clarity on the part of Mr. Mentzer that this Court will consider whether there is sufficient cause to set aside the Dismissal Order.

## II.

No one has disputed that the Dismissal Order was issued pursuant to Fed.R.Civ.P. 41(b), which is incorporated into this Adversary Proceeding pursuant to Fed.R.Bankr.P. 7041.[3]   It is well established in the Third Circuit that a court dismissing a case pursuant to Rule 41(b) should balance the following six factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and failure to respond to discovery; (3) whether there is a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of alternative sanctions other than dismissal; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).

---

[3] At the opening of the January 16, 2015 evidentiary hearing, defense counsel made an oral motion for the dismissal of the complaint with prejudice. (Audio Recording of Hearing Held on January 16, 2015 at 10:00 AM). Moreover, Fed.R.Civ.P. 41(b) permits a court to dismiss a plaintiff's case *sua sponte* for failure to prosecute. See Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339, 341 (3d Cir. 1982).

Given the significance that dismissal with prejudice has on the Plaintiff's claims, the Court has elected to conduct a *de novo* review of the six <u>Poulis</u> factors to the record of this case to determine whether dismissal, with prejudice, is appropriate and whether the Motion for Relief should be granted.

### Extent of Ms. Moore's Personal Responsibility

In <u>Link v. Wabash Railroad Co.</u>, 370 U.S. 626, 633-34 (1962), the U.S. Supreme Court established the general rule that a client is subject to the consequences of the acts and omissions of his lawyer (hereinafter, the "Link Rule"). However, the United States Court of Appeals for the Third Circuit does not hold the Link Rule to be absolute; otherwise, there would be no reason for including an analysis of "the extent of the client's personal responsibility" among the six <u>Poulis</u> factors.

The <u>Poulis</u> factors are intended to address situations in which, *inter alia*, "[t]he brunt of the order falls on plaintiffs, who have been deprived of the opportunity to litigate their case on the merits, when the only culpable party may well be their attorney." <u>Burns v. MacMeekin (In re MacMeekin)</u>, 722 F.2d 32, 35 (3d Cir. 1983) (citing <u>Titus v. Mercedes Benz of North America</u>, 695 F.2d 746, 750 n.9 (3d Cir. 1982) (opinion announcing judgment of court); <u>Titus</u>, 695 F.2d at 757 n.4 (Garth, J., dissenting)). The Third Circuit acknowledges that "public confidence in the administration of justice is weakened when a party is prevented from presenting his case because of the gross negligence of his

lawyer . . . ."  <u>Carter v. Albert Einstein Med. Ctr.</u>, 804 F.2d 805, 808 (3d Cir. 1986).

This Court is mindful that the Third Circuit also recognizes an exception to the Link Rule in the related context of analyzing requests for relief pursuant to the catchall provisions of Fed.R.Civ.P. 60(b)(6), which is incorporated into bankruptcy proceedings by operation of Fed.R.Bankr.P. 9024 and affords a litigant relief from a judgment or order for "any other reason that justifies relief."   Accordingly, as a limited exception to the Link Rule, courts have granted relief under Rule 60(b)(6), albeit under extraordinary circumstances. Such extraordinary circumstances include cases where counsel was found to have been grossly negligent (as opposed to being merely negligent), and when counsel has effectively abandoned his client and misled the client into a false sense that the client's interests have been actively represented.   See <u>e.g.</u>, <u>Boughner v. Secretary of Health, Educ. and Welfare</u>, 572 F.2d 976, 978 (3d Cir. 1978); <u>Defeo v. Allstate Ins. Co.</u>, C.A. No. 95-244, 1998 U.S. Dist. LEXIS 9060, 1998 WL 328195, at *4 (E.D. Pa. June 19, 1998) ("Gross neglect by counsel amounting to abandonment may justify relief under Rule 60(b)(6)."); <u>IPA Systems Inc. v. Conproco Corp.</u>, No. 81-1128, 1983 U.S. Dist. LEXIS 18885 (E.D. Pa. Mar. 2, 1983) (granting relief under Rule 60(b)(6) where lawyer's conduct was inexcusable and extreme); <u>Zak v. Ultimate Distribution</u>, C.A. No. 04-4392, 2006 U.S. Dist. LEXIS 89005, 10-11 (D. N.J. Dec. 8, 2006) (granting relief under Rule 60(b)(6) based in part on the gross and inexcusable conduct

of prior counsel); <u>United States v. Cirami</u>, 563 F.2d 26, 34-35 (2d Cir. 1977) (granting relief under Rule 60(b)(6) based on the "constructive disappearance" of defendants' attorney, who was allegedly suffering from a psychological disorder which led him to neglect almost completely his clients' business while at the same time assuring them that he was attending to it, and who had made himself unavailable even to the trial judge); <u>Vindigni v. Meyer</u>, 441 F.2d 376, 377 (2d Cir. 1971) (granting relief under Rule 60(b)(6) where there was the unusual fact of the complete disappearance of plaintiff's attorney); <u>Community Dental Servs. v. Tani</u>, 282 F.3d 1164, 1170-71 (9th Cir. 2002) (granting relief under Rule 60(b)(6) where attorney virtually abandoned and then deliberately misled his client by explicitly representing the progress of the case); <u>L.P. Steuart, Inc. v. Matthews</u>, 329 F.2d 234, 235-36 (D.C. Cir. 1964) (affirming granting relief under Rule 60(b)(6) from dismissal for lack of prosecution where attorney experienced family problems).

Courts have also emphasized a degree of client responsibility in the form of diligence and communication with counsel. Thus, where the client is equally as culpable for acts or omissions giving rise to the entry of the judgment, Rule 60(b)(6) relief is certainly not available and Rule 41(b) dismissal may still be appropriate under some circumstances. <u>In re Babcock</u>, 258 B.R. 646, 650 (Bankr. E.D. Va. 2001) (noting the U.S. Supreme Court's holding in <u>Ackermann v. United States</u>, 340 U.S. 193, 199-202, 95 L. Ed. 207, 71 S. Ct. 209 (1950), that "voluntary or culpable action on the part of the movant will preclude Fed.

R. Civ. P. 60(b)(6) relief") (citing In re Rex, 217 B.R. 57, 63 (Bankr. E.D. Pa.

1998)); Frost v. Subramanian (In re Subramanian), 245 Fed. Appx. 111, 117

(3d Cir. 2007) (debtors failed to show their entitlement to relief from judgment

under Rule 60(b)(6) where they were aware of their counsel's actions, received

copies of motions, made no inquiries to their counsel or the court, and failed to

argue that their counsel made any misrepresentations to them regarding the

status of their case); Am. Reliance Ins. Co. v. Mirabile, No. 85-3225, 1986 U.S.

Dist. LEXIS 19871 at *7-8, 1986 WL 10811, at *3 (E.D. Pa. Sept. 29, 1986)

(client not culpable where lawyer gave reassurance that the case was

proceeding even after judgment had been entered and the client promptly

retained new counsel after learning of attorney's neglect); Henry v. Abbott

Labs., 2014 U.S. Dist. LEXIS 390, at *8, 2014 WL 29509, at *3 (S.D. Ohio Jan.

3, 2014) (granting relief under Rule 60(b)(6) where the client "did all that she

could reasonably be expected to do but was allegedly misled by her attorney

into believing he was looking out for her interests"); Fuller v. Quire, 916 F.2d

358, 359-61 (6th Cir. 1990) (affirming granting relief under Rule 60(b)(6) from a

dismissal for lack of prosecution where attorney misled and ignored the client);

Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010) (granting relief under Rule

60(b)(6) from dismissal with prejudice where attorney mislead the client to

believe he was actively litigating the case).  It is therefore through these lenses,

the Court will consider the Motion for Relief.

00016039                                    -10-

By way of an Order dated May 14, 2015, the Court required Mr. Mentzer to address whether his derelictions constituted gross negligence that effectively left his client unrepresented in these proceedings.  Mr. Mentzer responded by stating "As to the issue of Gross Negligence, the cases cited above required more then [sic] missing a hearing or failing to file a pre trial statement, thus my actions do NOT reach to that level." (Plaintiff's Brief, p. 5, Adv. No. 13-07023, Doc. No. 66) (capitalization original).

The Court has not heard directly from Ms. Moore, and Mr. Mentzer's contention was disputed neither by Ms. Moore personally nor the Defendant. As a result (and notwithstanding the Court's own hesitation to accept Mr. Mentzer's rendition of the case), the Court is without sufficient information supporting an inference that Mr. Mentzer affirmatively misled or effectively abandoned Ms. Moore in this action.  Rather, the record reflects that Mr. Mentzer has been active in this case—albeit negligently and in contravention of orders of the Court and rules promulgated in this District.  Thus, it does not appear that Mr. Mentzer abandoned his client in these matters, and Rule 60(b)(6) relief is not warranted merely as a *de facto* remedy for inexcusable neglect.

However, in contrast to the standard by which the Court decides Rule 60(b)(6) motions premised on gross negligence, applying the <u>Poulis</u> analysis to Rule 41(b) motions requires the Court to identify specific record evidence supporting the client's "awareness of her attorney's derelictions."   <u>Dunbar v.</u>

Triangle Lumber & Supply Co., 816 F.2d 126, 129 (3d Cir. 1987) (remanding to district court given, *inter alia*, "the absence of a finding with record support that [the client] bore some responsibility for the flagrant actions of her counsel").

There is nothing in the record to suggest that Ms. Moore was an active participant in Mr. Mentzer's negligence.  Rather, the state of the record is that, while Mr. Mentzer ignored or forgot to comply with the many deadlines and other requirements ordered by the Court in this Adversary Proceeding (and the underlying bankruptcy case as well), Ms. Moore herself may have had no knowledge of the various items ordered in the case.  The Court reaches this conclusion because, among the many deficiencies in Mr. Mentzer's prosecution of this case, Mr. Mentzer failed to provide for Ms. Moore's correct address in the Court's mailing matrix.  As such, serious questions abound as to whether Ms. Moore actually received any of the orders in question.

Support for the Court's concern lies in the bankruptcy petition itself, which states that Ms. Moore's address is "1136 Club Drive, Johnstown PA, 15905." (Bankr. No. 13-70150, Doc. No. 1).  Ms. Moore's Statement of Financial Affairs further states that she had no other address for the three year period prior to the petition date of March 1, 2013. (Statement of Financial Affairs, ¶ 15, Bankr. No. 13-70150, Doc. No. 1).  However, the record of the main bankruptcy case and two related adversary proceedings suggests that Ms. Moore was evicted from 1136 Club Drive, Johnstown PA, 15905, prior to the

petition date of March 1, 2013.  See e.g., Bankr. No. 13-70150, Doc. Nos. 1, 2, 14, 21; Adv. No. 13-07006, Doc. Nos. 1, 5, 9; Adv. No. 13-07023, Doc. Nos. 1, 3, 5, 13, 17, 24, 28, 42, 45, 53, 57; and Audio Recordings of Hearings Held on November 22, 2013, June 5, 2014 and August 28, 2014.

Additionally, and contrary to both Fed.R.Bankr.P. 4002(a)(5) and W.PA.LBR 2002-2, Mr. Mentzer failed to file a statement of Ms. Moore's change of address.  As a result, to this date, the Court is unaware of where Ms. Moore resides and all notices in this case have gone to an address that is clearly incorrect.  Thus, the Court is not in a position to conclude that Ms. Moore was aware of counsel's filing and scheduling deficiencies or that she could have taken action to ensure that Mr. Mentzer was properly handling his case. Compare In re Dalton, C.A. No. 12-1182, 2012 WL 3648139 (W.D. Pa. Aug. 23, 2012) (the mailbox rule would ordinarily suffice to impute notice).

Based on this state of the record, the Court is disinclined to conclude that Ms. Moore bore primary responsibility for Mr. Mentzer's derelictions.

**Prejudice to Mr. Lalone**

For purposes of this Poulis factor, "prejudice includes 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'" Briscoe v. Klaus, 538 F.3d 252, 259 (3d Cir. 2008) (quoting Adams v. Trs. of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994)).  In the matter *sub judice*, there is no contention that Mr. Mentzer's

derelictions, enumerated when considering the third <u>Poulis</u> factor below, caused a loss of evidence or a dimming of the witnesses' memories.

However, it cannot be said that Mr. Mentzer's failures were without a financial cost to Mr. Lalone, who presumably incurred legal fees associated with attending the January 16, 2015 evidentiary hearing at which Mr. Mentzer failed to appear and incurred additional legal expenses in connection with the defense of the Motion for Relief that is now before the Court.

For the purpose of this <u>Poulis</u> factor, the Court recognizes that a finding of financial prejudice to Mr. Lalone in a vacuum weighs against setting aside the Dismissal Order and granting the Motion for Relief.  But the Court must also consider the degree of prejudice to Mr. Lalone. <u>See</u> <u>Briscoe</u>, 538 F.3d at 260 n.3 ("[T]here are varying degrees of prejudice, and courts should consider the degree of prejudice that the defendant suffered accordingly when conducting the balancing of the <u>Poulis</u> factors.").

The Court finds that while the nature and degree of prejudice to Mr. Lalone is not trifling, the degree of prejudice can be adequately vitiated by imposing alternative sanctions as set forth in consideration of the fifth <u>Poulis</u> factor, below.

## History of Dilatoriness

While the Dismissal Order expressly references the failure of Ms. Moore to file a pretrial statement and her failure to appear at the evidentiary hearing, it was issued in culmination of a lengthy pattern of errors and delinquencies by

Plaintiff's counsel throughout both the main bankruptcy case and the two associated adversary proceedings. Briscoe, 538 F.3d at 261 ("we must evaluate 'a party's problematic acts . . . in light of its behavior over the life of the case'") (citing Adams v. Trs. of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir. 1994), Dyotherm Corp. v. Turbo Machine Co., 392 F.2d 146 (3d Cir. 1968)).

Mr. Mentzer's carelessness with respect to the accuracy of the content of his filings is demonstrated by a pattern of errors, many of which affect his client as a debtor in bankruptcy and as a plaintiff in an adversary proceeding. For example, the bankruptcy petition states that Ms. Moore's address is "1136 Club Drive, Johnstown PA, 15905" and her Statement of Financial Affairs states that she had no other address for the three year period prior to the petition date of March 1, 2013.  (Bankr. No. 13-70150, Doc. No. 1).  However, an essential fact supporting Ms. Moore's claim for the return of property is that she was evicted from 1136 Club Drive prior to the petition date of March 1, 2013.[1]  Mr. Mentzer, however, repeatedly ignored this reality for reasons that are unknown to the Court.  What is known to the Court is that Mr. Mentzer's malfeasance, if accepted, impacts the legitimacy of the Plaintiff's claims and, as set forth above, deprived the Plaintiff-Debtor of direct service of documents in this case.

---

[1] See Bankr. No. 13-70150, Doc. Nos. 1, 2, 14, 21; Adv. No. 13-07006, Doc. Nos. 1, 5, 9; Adv. No. 13-07023, Doc. Nos. 1, 3, 5, 13, 17, 24, 28, 42, 45, 53, 57; and Audio Recordings of Hearings Held on November 22, 2013, June 5, 2014 and August 28, 2014.

The address of the Debtor in the bankruptcy petition was not the only problem associated with the petition filed by Mr. Mentzer on behalf of his client.

On March 1, 2013, Mr. Mentzer filed a Certificate of Credit Counseling that did not have Ms. Moore's correct name on it, and a week later filed a new Certificate of Credit Counseling using a briefing date of March 5, 2013, when the briefing date was actually February 28, 2013.  (Bankr. No. 13-70150, Doc. Nos. 4 and 9).  The briefing date is significant in light of the fact that the petition was filed on March 1, 2013 and Ms. Moore's eligibility as a debtor in bankruptcy requires that the briefing occurred within the period 180 days prior to the petition date pursuant to 11 U.S.C. § 109(h).[2] See In re Tomco, 339 B.R.145 (Bankr. W.D. Pa. 2006).  As such, Mr. Mentzer's failure to pay attention to the credit counseling certificates he filed almost rendered the Plaintiff-Debtor ineligible for bankruptcy relief in the first instance.

Mr. Mentzer's neglect extended further to his prosecution of the adversary proceedings in this case.  Specifically, on March 7, 2013, Mr. Mentzer filed a Motion to Return Exempt Property, erroneously stating that a Judgment for Possession was entered by Magisterial District Judge Barron on December 20, 2013, when in fact it was entered on December 20, 2012, and

---

[2] On March 12, 2013, the Clerk's Office entered a corrective entry, instructing Mr. Mentzer to use the correct briefing date when docketing Certificates of Credit Counseling. (Bankr. No. 13-70150, Doc. No. 12).

erroneously stating that the Debtor's petition date was March 1, 2012, when in fact it was March 1, 2013. (Bankr. No. 13-70150, Doc. No. 8).[3]

Given that these dates are determinative as to whether the Judgment for Possession was prior to the petition date (and potentially avoidable), it is obvious to any trained bankruptcy lawyer that the dates of these events have direct bearing on Ms. Moore's cause of action. Moreover, as a result of Mr. Mentzer's slipshod approach to preparing filings (i.e., cutting and pasting without a dutiful review of content), these factual errors reappear in the Complaint filed on March 12, 2013, the Amended Complaint filed on March 28, 2013 and the Complaint filed on July 11, 2013. (Adv. No. 13-07006, Doc. Nos. 1, 5; Adv. No. 13-07023, Doc. No. 1). A year later, upon filing a Motion for Judgment on the Pleadings on March 27, 2014, Mr. Mentzer corrected the erroneous date of the Judgment for Possession, yet he failed to correct the erroneous petition date. (Adv. No. 13-07023, Doc. No. 22). Thus, Mr. Mentzer's approach to cleaning up his sloppiness is itself slapdash.[4]

---

[3] The Court notes in passing that the Motion to Return Exempt Property also erroneously stated that the case was filed under Chapter 13 of the Code, when in fact it is a Chapter 7 case. Mr. Mentzer repeated this error no less than eight additional times:  the Complaint filed on March 12, 2013 (Adv. No. 13-07006, Doc. No. 1); the Amended Complaint filed on March 28, 2013 (Adv. No. 13-07006, Doc. No. 5); the Complaint filed on July 11, 2013 ( Adv. No. 13-07023, Doc. No. 1); the Motion for Default Judgment filed on August 29, 2013 (Adv. No. 13-07023, Doc. No. 3); the Amended Motion for Default Judgment filed on August 30, 2013 (Adv. No. 13-07023, Doc. No. 5); the Motion to Set Hearing filed on January 31, 2014 (Adv. No. 13-07023, Doc. No. 14); the Amended Motion to Set Hearing filed on February 12, 2014 (Adv. No. 13-07023, Doc. No. 16); and the Amended Motion to Continue/Reschedule Hearing filed on February 12, 2014 (Adv. No. 13-07023, Doc. No. 17).
[4] Despite correcting the erroneous judgment date in paragraph 3, he failed to correct the erroneous petition date in paragraph 7, both of which are on the first page of his two-page motion.

The record also demonstrates that Mr. Mentzer repeatedly violated Federal and Local Rules in this bankruptcy case, despite the issuance of various court orders and corrective entries on the docket by the clerk's office (which were intended to curtail such errors absent further Court intervention).

By way of example, Mr. Mentzer violated Fed.R.Bankr.P. 4002(a)(5) and W.PA.LBR 2002-2 by failing to file a statement of Ms. Moore's change of address. Consequently, as set forth above, it appears that Mr. Mentzer's client did not receive direct notice of any of the filings in the main bankruptcy case or the two related adversaries.

Mr. Mentzer also violated Fed.R.Bankr.P. 7001(1) on March 7, 2013, by failing to commence an adversary proceeding and instead filed the Motion to Return Exempt Property in the main bankruptcy case. (Bankr. No. 13-70150, Doc. No. 8).

In the course of filing the Motion to Return Exempt Property, Mr. Menzter further violated W.PA.LBRs 2002-1, 5005-6, 7008-1(b), 9004-1, 9013-1 and 9013-4. W.PA.LBR 2002-1 requires the filing of a certificate of service to ensure that affected parties are afforded adequate notice as a fundamental component of due process. W.PA.LBR 5005-6 requires documents filed by counsel to set forth detailed information in the signature block (which is relevant for keeping counsel's address current and for certifying that counsel is licensed to practice before the Court), mirroring the requirements of our

District Court as set forth in W.D.Pa.LCvR 5.2(B)[5] and ensuring compliance with Fed.R.Bank.P 9011.

Mr. Mentzer's pleadings repeatedly violated W.PA.LBRs 7008-1(b) and 9004-1 in that Mr. Mentzer failed to identify Mr. Lalone as a respondent to the contested matters filed by Mr. Mentzer.  These rules set forth specific caption requirements which ensures that parties who have been sued in court can ascertain that they have, in fact, been sued.[6] SLW Capital, LLV v. Mansarray-Ruffin (In re Mansarray-Ruffin), 530 F.3d 230 (3d Cir. 2008)(adversary process of bankruptcy rules insure compliance with due process) and In re O'Brien Environmental Energy, Inc., 188 F.3d 116 (3d Cir. 1999)(where claimant not identified in caption of pleading due process is not met where respondent is not apprised that rights could be affected).

Mr. Mentzer further repeatedly failed to file separate proposed orders with his requests for relief even though W.PA.LBRs 9013-1(a) and 9013-4(b) require the filing of a proposed order as a separate attachment to all requests

---

[5] W.D.Pa.LCvR 5.2(B) provides that: "Any document signed by an attorney for filing shall contain under the signature line the name, address, telephone number, fax number, e-mail address (if applicable) and Pennsylvania or other state bar identification number. When listing the bar identification number, the state's postal abbreviation shall be used as a prefix (e.g., PA 12345, NY 246810)."  Such requirements are common throughout the federal courts.  See e.g., S.D. Ala. Loc. R. 5.1.

[6] For a detailed discussion of the purpose and enforceability of this Court's caption requirements, see Morrison v. Office of the United States Tr. (In re Morrison), 375 B.R. 179 (Bankr. W.D. Pa. 2007).

00016039                          -19-

for relief.[7]   The filing of a proposed order is a simple task for any counsel to complete but Mr. Mentzer chose to ignore these rules in this case on multiple occasions without explanation and without leave of Court.

Specifically, on March 8, 2013, the Court issued an Order informing Mr. Mentzer that the Motion to Return Exempt Property would be denied without prejudice unless Mr. Mentzer filed a proposed order as a separate document and linked it to the motion. (Bankr. No. 13-70150, Doc. No. 10).   The Court would expect that any conscientious attorney, upon receipt of such an order, would review the applicable local rules (W.PA.LBRs 7008-1(h), 9013-1(a) and 9013-4(b)) and take care not to repeat the error.   However, Mr. Mentzer proceeded to violate W.PA.LBRs 7008-1(h), 9013-1(a) and 9013-4(b) no less than eight (8) additional times, including when filing the Motion for Relief presently under consideration.[8]   He did so despite repeated warnings by the Court on January 31, 2014 and February 13, 2014 that a separate proposed

---

[7] A similar requirement is set forth by the Bankruptcy Court for the District of New Jersey in D.N.J. LBR 9072-1(a).

[8] Subsequent violations of W.PA.LBRs 7008-1(h), 9013-1(a) and 9013-4(b) include: the Complaint filed on March 12, 2013 (Adv. No. 13-07006, Doc. No. 1); the Amended Complaint filed on March 28, 2013 (Adv. No. 13-07006, Doc. No. 5); the Complaint filed on July 11, 2013, (Adv. No. 13-07023, Doc. No. 1); the Motion to Set Hearing on January 31, 2014 (Adv. No. 13-07023, Doc. No. 14); the Amended Motion to Set Hearing filed on February 12, 2014 (Adv. No. 13-07023, Doc. No. 16); the Amended Motion to Continue/Reschedule Hearing filed on February 12, 2014 (Adv. No. 13-07023, Doc. No. 17); the Amended Motion to Reconsider Dismissal of Previous Motion filed on August 8, 2014 (Adv. No. 13-07023, Doc. No. 45); Motion for Relief filed on January 20, 2015 (Adv. No. 13-07023, Doc. No. 57).

order must be filed or the relief would be denied. (Adv. No. 13-07023, Doc. Nos.

15 and 19).

Likewise, subsequent to the issuance of the March 8, 2013 Order, Mr.

Mentzer proceeded to violate W.PA.LBRs 2002-1, 5005-6, 7008-1(b) and 9004-

1 no less than a dozen times each.[9]  Remarkably, the vast majority of these

repeated violations occurred after the Court dismissed Ms. Moore's original

adversary complaint due to Mr. Mentzer's failure to remedy identified filing

deficiencies.[10]  Mr. Mentzer obviously failed to improve his adherence to the

applicable Federal and Local Rules, despite the negative consequences that his

derelictions imposed upon his client.

With respect to Mr. Mentzer's repeated failures to file a certificate of

service, the Court's concerns are rooted in the fact that Mr. Mentzer repeatedly

failed to serve the Defendant, Mr. Lalone, with pleadings asking for relief.

---

[9] Subsequent violations of W.PA.LBRs 2002-1, 5005-6, 7008-1(b) and 9004-1 include: the Complaint filed on March 12, 2013 (Adv. No. 13-07006, Doc. No. 1); the Amended Complaint filed on March 28, 2013 (Adv. No. 13-07006, Doc. No. 5); the Complaint filed by Mr. Mentzer on July 11, 2013 (Adv. No. 13-07023, Doc. No. 1); the Motion for Default Judgment filed on August 29, 2013 (Adv. No. 13-07023, Doc. No. 3); the Amended Motion for Default Judgment filed on August 30, 2013 (Adv. No. 13-07023, Doc. No. 5); the Motion to Set Hearing filed on January 31, 2014 (Adv. No. 13-07023, Doc. No. 14); the Amended Motion to Set Hearing filed on February 12, 2014 (Adv. No. 13-07023, Doc. No. 16); the Amended Motion to Continue/Reschedule Hearing filed by Mr. Mentzer on February 12 (Adv. No. 13-07023, Doc. No. 17); the Motion for Judgment on the Pleadings filed on March 27, 2014 (Adv. No. 13-07023, Doc. No. 22); the Motion to Reconsider Dismissal of Previous Motion filed on July 25, 2014 (Adv. No. 13-07023, Doc. No. 42); the Amended Motion to Reconsider Dismissal of Previous Motion filed on August 8, 2014, (Adv. No. 13-07023, Doc. No. 45); and the Motion for Relief filed on January 20, 2015 (Adv. No. 13-07023, Doc. No. 57).

[10] Mr. Mentzer violated the Court's Order dated March 22, 2013 by failing to address the defects of the Complaint. Consequently, on April 2, 2013, the Court issued an Order dismissing the Adversary Proceeding without prejudice. (Adv. No. 13-07006, Doc. No. 6).

Consider the Complaint filed on July 11, 2013 which commenced Adversary Proceeding No. 13-07023.

The basic cause-effect chain of Mr. Mentzer's dereliction is summarized as follows: Mr. Mentzer's failed to serve Mr. Lalone with the Complaint or Summons, resulting in Mr. Lalone's failure to file an Answer.  Mr. Mentzer filed a Motion for Default Judgment on August 29, 2013 (Adv. No. 13-07023, Doc. No. 3).[11]  This caused the Court to schedule a hearing on October 11, 2013 on the Motion for Default Judgment.  Mr. Menzter violated Fed.R.Bank.P. 7004 and the express language of the Scheduling Order by failing to serve the Order and failing to serve the Motion for Default Judgment on Mr. Lalone.  Mr. Mentzer did not appear at the October 11, 2013 hearing, causing the Court to reschedule the hearing for November 22, 2013.[12]  At the November 22 hearing, the Court was made aware of Mr. Mentzer's failure to serve the Complaint on Mr. Lalone.  This caused the Court to enter an Order denying the Motion for

---

[11] Mr. Menzter filed the Motion for Default Judgment three days after the specified deadline of August 26, 2013 for such a motion.  See Adv. No. 13-07023, Doc. No. 2.

[12] Mr. Mentzer failed to appear at the October 11, 2013 hearing on Ms. Moore's Motion for Default Judgment. (Adv. No. 13-07023, Doc. No. 7).  However, Mr. Mentzer's failure to attend October 11, 2013 hearing is purported to have been due to a medical emergency, which the Court considers to be a legitimate excuse. As such, Mr. Mentzer's failure to attend this hearing is not included among his derelictions for purposes of the present Poulis analysis, nor is it included among the reasons for his reprimand or for considering the imposition of monetary sanctions.  Mr. Lalone's failure to attend the hearing is excused by the fact that he was not served with the Scheduling Order (nor the motion) due to Mr. Mentzer's violation of Fed.R.Bank.P. 7004 and the express language of the Scheduling Order itself.

Default Judgment and affording Mr. Lalone an opportunity to file an Answer. (Adv. No. 13-07023, Doc. No. 11).

In addition to repeating numerous rule violations, Mr. Mentzer would, six months later, repeat his service failure when filing Ms. Moore's subsequent Motion for Judgment on the Pleadings on March 27, 2014. (Adv. No. 13-07023, Doc. No. 22).   The resulting waste of Court time and resources is reflected in a similar cause-effect chain summarized as follows: Mr. Mentzer failed to timely serve Mr. Lalone with the Motion for Judgment on the Pleadings, resulting in Mr. Lalone's failure to file a timely response.[13] This caused the Court to enter a default Order against Mr. Lalone on April 23, 2014, which caused Mr. Lalone to file a motion seeking to have the Order vacated.[14]   This caused the Court to schedule and hold a hearing on June 5, 2014, at which the Court was made aware of Mr. Mentzer's failure to serve the Motion for Judgment on the Pleadings on Mr. Lalone.   This caused the Court to vacate its April 23, 2014 Order and to schedule a hearing for July 18, 2014 on Ms. Moore's Motion for Judgment on the Pleadings. (Adv. No. 13-07023, Doc. No. 40).   Again, all of these machinations have been caused by Mr. Mentzer's neglect.

---

[13] At such time Mr. Lalone was still proceeding as a *pro se* Defendant and would not have received electronic notice.

[14] In his motion to vacate the order of Aril 23rd, Mr. Lalone stated that he first became aware of the Motion for Judgment on the Pleadings upon receipt of the Order setting the date for hearing of the motion.  He contended that he did not, however, receive service of the motion until presumably sometime after April 10th while he was out of town.  Upon his return on April 17th he received the pleading and filed his response, albeit untimely.  At the point of the filing of his response, the default Order was already being processed by the Clerk's Office for filing on the docket.

The Court would expect any conscientious attorney, having created yet another service-related mess, to be deeply concerned and committed to redeeming his mistakes.  Not Mr. Mentzer.  To the contrary, as explained by Mr. Mentzer himself, the subsequent hearing on the reinstated Motion for Judgment on the Pleadings didn't even make it on his calendar—it had fallen through the cracks—and as a result, Mr. Mentzer failed to appear at the July 18 hearing.  This caused the Court to enter yet another Order denying Ms. Moore's Motion for Judgment on the Pleadings for failure to prosecute. This caused Mr. Mentzer to file another motion seeking to have the Court reconsider the Order denying the Motion for Judgment on the Pleadings for failure to prosecute. This, in-turn, caused the Court to schedule and hold another hearing on August 28, 2014.  At the August 28, 2014 hearing, Mr. Mentzer's motion seeking to have the Court set aside its Order denying Ms. Moore's Motion for Judgment on the Pleadings for failure to prosecute was denied, and a trial on the Complaint was ultimately scheduled.

Mr. Mentzer then failed to appear at the January 16, 2015 trial, resulting in the Dismissal Order presently under review.  This caused Mr. Mentzer to file the Motion for Relief presently under consideration.  Of course, as referenced in the Dismissal Order presently at issue, Mr. Mentzer did not file a pretrial statement, nor did he file proposed exhibits or a pretrial brief or memorandum. Mr. Mentzer not only failed to assert arguments and present facts in support of Ms. Moore's position in this case, he also failed to present any counter-

argument or otherwise challenge the position presented by Mr. Lalone as the opposing party.    Consequently, Mr. Lalone's pretrial memorandum, trial evidence, and trial arguments went unchallenged by Mr. Mentzer.  (Adv. No. 13-07023, Doc. No. 53).   It is in this preceding context that the Court determines that the third Poulis factor weighs against setting aside the Dismissal Order and against granting the Motion for Relief.

**Whether the Conduct of Ms. Moore or Counsel Was in Bad Faith**

For purposes of this Poulis factor, the Third Circuit has held that willfulness "involves intentional or self-serving behavior. If the conduct is merely negligent or inadvertent, we will not call the conduct 'contumacious'." Briscoe, 538 F.3d at 262 (citing Poulis, 747 F.2d at 868-69); see also Adams v. Trs. of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir. 1994).

As noted in the context of the first Poulis factor, above, the record does not reflect that Ms. Moore personally has acted in bad faith.  In fact, the record reflects that Ms. Moore had insufficient direct notice of the orders of the Court as they were served at an address where she was evicted.  As such, she has been proceeding in the dark at the direction of her legal counsel, who himself acknowledges that he managed this case neglectfully.

Of course, notice to counsel is notice to his client. Link, 370 U.S. 633-34 (in a system of representative litigation, "each party is deemed bound by the acts of his lawyer-agent, and is considered to have notice of all facts, notice of

which can be charged upon the attorney.")(some quotations omitted).   The
Court's observations above should not obviate this result.   The Court's
observations merely go to Ms. Moore's own personal conduct in this case, and
whether she has subjectively proceeded in good faith.

In contrast, Mr. Mentzer's conduct does demonstrate an inexcusable
disregard of the Federal and Local Rules applicable to filing documents in both
bankruptcy cases and adversary proceedings in this District.   Likewise, he has
engaged in inexcusable neglect by failing to adequately calendar hearings and
by failing to appear before the Court.

Notwithstanding these facts, an *indicia* of bad faith is a finding of self-
serving behavior on the part of the attorney. See Briscoe, 538 F.3d at 262;
Poulis, 747 F.2d at 868-69; Adams, 29 F.3d at 875.   Nothing in the record
indicates that Mr. Mentzer's inexcusable neglect was calculated to achieve an
advantage over his adversary or calculated to avoid any anticipated
disadvantage compared to the merits of the case as advocated by the
Defendant.   In fact by representing the Plaintiff in a lackadaisical fashion, Mr.
Mentzer gained nothing by his repeated filing errors, by his failure to comply
with the Court's pretrial order, or by his failure to attend hearings.   The results
of these omissions were actually harmful to his client as the Dismissal Order
was entered.   As such, there is no evidence that Mr. Mentzer's conduct through
the date of entry of the Dismissal Order was something more than mere
neglect.

Mr. Mentzer's conduct, regardless of how unacceptable it may have been to the Court, does not establish a level of deliberate bad faith sufficient to support the extreme sanction of dismissal with prejudice in accordance with Poulis, Adams and Briscoe.    However, the fact that the Court is finding an insufficient record of bad faith for purposes of imposing the extreme sanction of dismissal with prejudice under a Poulis analysis does not mean that the Court does not have any other concerns about the conduct of Mr. Mentzer.    To the contrary, Mr. Mentzer's aforementioned derelictions compel a disciplinary response by this Court, albeit as a lesser alternative to dismissal with prejudice.

### The Availability of Alternative Sanctions Other Than Dismissal

In determining whether to set aside the Dismissal Order based on balancing the Poulis factors, the Court deems the fifth Poulis factor as pivotal. The Third Circuit recognizes the "desirability of allowing cases to proceed on the merits" and "urge[s] appraisal of less severe measures" than dismissal. See Burns v. MacMeekin (In re MacMeekin), 722 F.2d 32, 35 (3d Cir. 1983) (citing Madesky v. Campbell, 705 F.2d 703 (3d Cir. 1983); Gross v. Stereo Component Systems, Inc., 700 F.2d 120 (3d Cir. 1983); Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339 (3d Cir. 1982)).    Consequently, "courts have tended to impose sanctions on the attorney when his delinquencies have been the cause of delay and the client is not personally guilty of any lack of diligence." Id.[15]

---

[15] In addition to recognizing an exception to the Link Rule, Poulis also presents an exception to the
(continued...)

As set forth above, the Dismissal Order was the culmination of repeated violations by Mr. Mentzer regarding his obligation to comply with Court orders and to adhere to Federal and Local Rules of practice.

The record reflects that the issuance of corrective entries by the Clerk's Office proved ineffectual to induce counsel to comply with the rules of this Court.  Likewise, neither the dismissal of Ms. Moore's Motion for Judgment on the Pleadings for failure to prosecute, nor the dismissal of the first adversary proceeding without prejudice, deterred Mr. Mentzer from failing to diligently prosecute the second adversary proceeding.  Accordingly, upon Mr. Mentzer's failure to appear for trial, the Court considered the Dismissal Order to have been justified under the circumstances.

Nonetheless, upon *de novo* review of this matter, the Court acknowledges that other than dismissal of this action, there are at least two alternative sanctions available as a result of Mr. Mentzer's failure to appear at trial.  First, Mr. Mentzer could be admonished for his egregious derelictions.  Second, monetary sanctions could be imposed upon Mr. Mentzer as an alternative to dismissal with prejudice.  In fact, the Court's trial order even contemplates the possibility of sanctions if its provisions are violated.  These matters should be considered by the Court before it upholds the Dismissal Order.

---

[15](...continued)
corollary rule expressed by the U.S. Supreme Court that, if an attorney's conduct was substantially below what was reasonable under the circumstances, the client's remedy is a suit for malpractice. Link v. Wabash Railroad Company, 370 U.S. 626, 82 S. Ct. 1386, n.10 (1962).

The present consideration of alternative sanctions is undertaken in light of the fact that this Court is charged with the important and occasionally unpleasant duty of supervising the conduct of attorneys appearing before it.  It is in the best interest of the public, the bar and the judicial system to ensure that attorneys fulfill their obligations as licensed professionals and officers of the Court.  See Dunbar v. Triangle Lumber & Supply Co., 816 F.2d 126, 129 (3d Cir. 1987) ("Defaults in professional obligations are a blight on the legal system and a betrayal of the privilege accorded the legal profession.")  The Court's authority to enforce professional conduct is commensurate with its supervisory responsibilities.  See, e.g., In re Snyder, 472 U.S. 634 (1985) (discussing the long-recognized inherent authority of courts to discipline attorneys who practice before them), Fed.R.Bankr.P. 9011 (establishing procedure for sanctioning attorneys in connection with filed submissions to courts), and W.PA.LBR 9010-1(e) (incorporating for use in Bankruptcy Court the attorney disciplinary procedure as established in the Local Rules of the U.S. District Court for the Western District of Pennsylvania).

Mr. Mentzer is subject to the provisions of the Pennsylvania Rules of Professional Conduct as codified in 204 Pa. Code § 81.1 et seq. (2015).  The Rules of Professional Conduct clarify that the context of a lawyer's responsibilities includes court rules defining specific procedural law.  See Scope, ¶ 15, 204 Pa. Code § 81.2.  Pursuant to 28 U.S.C. § 2075 and Bankruptcy Rule 9029, this Court was authorized to promulgate local rules of

practice and procedure, which have the force and effect of law and are binding upon all parties.  See <u>Indus. Fin. Corp. v. Falk (In re Falk)</u>, 96 B.R. 901, 907 (Bankr. D. Minn. 1989) (citing <u>Weil v. Neary</u>, 278 U.S. 160, 169, 49 S. Ct. 144, 73 L. Ed. 2d 243 (1929)).

Each of the Local Rules violated by Mr. Mentzer was promulgated through a formal rule-making process which included input from a Standing Local Rules Committee comprised of practitioners and trustees representative of diverse clients and interests, a public comment period, review and approval by our District Court, and review and approval by the Third Circuit.  At no time did Mr. Mentzer request an exemption from any of this Court's Local Rules (and instead, for reasons not explained by counsel, he ignored them over and over again).

Other than concluding that the Mr. Mentzer's multiple and repeated violations of this Court's Local Rules were done knowingly (and therefore deliberately), the only plausible alternative explanation is that Mr. Mentzer was ignorant of those Local Rules, despite their force and effect as law.  Such circumstances implicate Rule 1.1 of the Pennsylvania Rules of Professional Conduct, which provides that "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." 204 Pa. Code Part V, Subpt A, Ch 81, Subch A, Rule 1.1. Accordingly, to invoke

00016039                                         -30-

ignorance of the Local Rules (as an alternative to defiance of the rules) would draw Mr. Mentzer's professional competence squarely into focus.

Mr. Mentzer's failure to meet deadlines, file pretrial documents and attend hearings is disrespectful of the time and resources of the Court and the opposing party. Such conduct is contrary to the Pennsylvania Rules of Professional Conduct which states that "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." See Preamble, ¶ 5, 204 Pa. Code § 81.1. Additionally, Mr. Mentzer's conduct raises concerns in light of Rule 1.3 of the Pennsylvania Rules of Professional Conduct which also provides that: "A lawyer shall act with reasonable diligence and promptness in representing a client." 204 Pa. Code Part V, Subpt A, Ch 81, Subch A, Rule 1.3. In protection of both clients and the integrity of the legal profession, the Rules of Professional Conduct preclude Mr. Mentzer from relying on an excuse akin to "I was overwhelmed with work" or "I had too much on my plate." See 204 Pa. Code Part V, Subpt A, Ch 81, Subch A, Rule 1.3, comment 2 ("A lawyer's work load must be controlled so that each matter can be handled competently.")

While many of the factual inaccuracies in Mr. Mentzer's written submissions to the Court might charitably be characterized as reflecting inadvertence and garden variety sloppiness, the manner in which Mr. Mentzer has attempted to excuse his failure to attend the January 16, 2015 trial raises concerns about his candor to the Court, thus implicating both Rule 3.3 of the

Pennsylvania Rules of Professional Conduct and Rule 9011 of the Federal Rules of Bankruptcy Procedure.

By way of background, neither Ms. Moore nor Mr. Mentzer appeared at the July 18, 2014 hearing on Ms. Moore's Motion for Judgment on the Pleadings. (Adv. No. 13-07023, Doc. No. 40). The motion was denied for failure to prosecute. Id. Mr. Mentzer filed a Motion to Reconsider Dismissal of Previous Motion, alleging that "Do [sic] to Circumstances beyond the control of [Ms. Moore], Ms. Moore and [Mr. Mentzer] failed to attend the date set to hear her Judgment on the Pleadings." (Motion to Reconsider Dismissal of Previous Motion, ¶ 3, Adv. No. 13-07023, Doc. No. 42). A hearing on the Motion to Reconsider Dismissal of Previous Motion was held on August 28, 2014, during which Mr. Mentzer explained his failure to appear for the July 18, 2014 hearing as due to the fact that he forgot to calendar it – that is, the hearing had inadvertently fallen through the cracks. After admonishing Mr. Mentzer and informing the parties that the dispute would be scheduled for an evidentiary hearing, the Court clearly communicated the necessity of appearing for hearings, stating: "Mr. Mentzer, … You need to show up for hearings. Okay?" To which Mr. Mentzer responded: "Yes, Your Honor. I apologize again for not showing up for the previous one." (Audio Recording of Hearing Held on August 28, 2014 at 10:00 AM, Courtroom B).

On August 28, 2014, only hours after Mr. Mentzer's apology and promise to attend future hearings, the Court scheduled an evidentiary hearing on Ms.

Moore's Complaint to Recover Exempt Property for January 15, 2015 at 1:30 PM. (Adv. No. 13-07023, Doc. No. 48).   On December 31, 2014, the evidentiary hearing was rescheduled for January 16, 2015 at 10:00 AM by way of a Rescheduling Order.    (Adv. No. 13-07023, Doc. No. 51).   After neither Ms. Moore nor Mr. Mentzer appeared at the January 16, 2015 evidentiary hearing, the Complaint was dismissed with prejudice pursuant to the Dismissal Order, which is the order presently under review. (Adv. No. 13-07023, Doc. Nos. 55 and 56). On January 20, 2015, Mr. Mentzer filed the Motion for Relief, which is the motion presently under reconsideration. (Adv. No. 13-07023, Doc. No. 57). On February 26, 2015, a hearing was held, during which Mr. Menzter offered two equally unpersuasive parts to the story offered in explanation for his failure to appear at the January 16, 2015 evidentiary hearing.

The first part of the story would have us believe that neither Ms. Moore nor Mr. Mentzer had notice of the Rescheduling Order.  (Motion for Relief, ¶ 2, Adv. No. 13-07023, Doc. No. 57; Audio Recording of Hearing Held on February 26, 2015 at 10:00 AM).  However, that is simply not true.

The Court reaches this conclusion because Mr. Mentzer has been registered as a "Filing User"[16] of the Court's Case Management / Electronic Case Filing ("CM/ECF") system[17] since February of 2006.  When a document is

---

[16] See W.PA.LBR 5005-1(a) and W.PA.LBR 5005-2(a).

[17] The CM/ECF system is a computerized case management system allowing bankruptcy courts to maintain electronic case files, and attorneys to file, serve and retrieve case documents through the Internet.

docketed in a case, the CM/ECF system automatically generates and transmits a "Notice of Electronic Filing" ("NEF") to the designated e-mail addresses of the Filing Users in that case. The NEF identifies, *inter alia*, the case in which the document was filed, provides a hyperlink to the document, and includes the corresponding docket text.

Throughout the period of December 30, 2014 through January 16, 2015, Mr. Mentzer had two e-mail addresses registered under his CM/ECF account: pmentzer@wpalaw.org (as his primary e-mail address) and happyslug1958@gmail.com (as his secondary e-mail address).[18]

On December 31, 2014, the CM/ECF system generated and successfully transmitted the NEF of the Rescheduling Order to Mr. Mentzer at both his primary and secondary e-mail accounts.[19]   Mr. Mentzer alleges that he was unable to access the document because his PACER account was terminated due to the failure of Laurel Legal Services to pay his PACER bill. (Request for New Hearing and Objection to Entrance of Judgment, ¶ 5, Adv. No. 13-07023,

---

[18]Pursuant to W.PA.LBR 5005-9(a), attorneys are required to establish a primary email address, and are permitted to designate a secondary email address, to which NEFs will be sent by the CM/ECF system.

[19] The Court E-mail Notification Tracking System ("CENTS"), implemented by the Systems Deployment and Support Division of the Administrative Office of the United States Courts, provides bankruptcy courts with a means of tracking the delivery of specific NEFs to specific e-mail addresses.  At the February 26, 2015 hearing on the Motion for Relief, the clerk of this Court testified that the CENTS Report confirms that the NEF of the Rescheduling Order was successfully delivered to both the primary and secondary e-mail addresses of Mr. Mentzer at 2:08 PM on December 31, 2014. (Audio Recording of Hearing Held on February 26, 2015 at 10:00 AM).

Doc. No. 57). However, as described more fully below, Mr. Mentzer's PACER

access is irrelevant as to whether he had notice of the Rescheduling Order.

The record reflects that the NEF that was successfully delivered to both

of Mr. Mentzer's registered e-mail accounts provided a hyperlink to the

Rescheduling Order, thereby allowing Mr. Mentzer one "free look" at the

Rescheduling Order pursuant to Judicial Conference policy. Moreover, the text

of the e-mail message itself expressly stated that the evidentiary hearing was

rescheduled for 10:00 AM on January 16, 2015. Thus, on December 31, 2014

Mr. Mentzer was notified that the evidentiary hearing was rescheduled to

January 16, 2015 at 10:00 AM without the need for Mr. Mentzer to access the

CM/ECF system and without the need for using any fee based PACER services

whatsoever.

Building upon the demonstrably false foundation that he did not receive

notice of the Rescheduling Order, the second part of Mr. Mentzer's story is

equally unavailing. Mr. Mentzer would have the Court believe that he and Ms.

Moore showed up at 1:30 PM on January 15, 2015, only to learn from the

Court Security Officers ("CSOs")[20] on duty that all bankruptcy court hearings

were rescheduled for the next day. (Request for New Hearing and Objection to

Entrance of Judgment, ¶ 2, Adv. No. 13-07023, Doc. No. 57). Mr. Mentzer also

---

[20] Mr. Mentzer refers to the CSOs as "Marshalls." (Request for New Hearing and Objection to
Entrance of Judgment, ¶ 2, Adv. No. 13-07023, Doc. No. 57). Aside from Mr. Mentzer's
misspelling of "Marshals," the Court recognizes that it is not uncommon to confuse CSOs as
Marshals, and therefore has taken liberty to substitute "CSOs" where he refers to Marshals.

alleges that Ms. Moore was told by the Defendant's counsel (Timothy Sloan, Esq.) that the hearing was rescheduled for January 16, 2015, but Mr. Sloan did not inform her of the time of the hearing. (Request for New Hearing and Objection to Entrance of Judgment, ¶ 3, Adv. No. 13-07023, Doc. No. 57). Mr. Mentzer argues that, because neither the CSOs nor Mr. Sloan informed them of the time of the hearing, Ms. Moore and Mr. Mentzer could only assume that the time would be 1:30 PM on the 16th of January.   To their dismay, their assumption was wrong, and they arrived too late for the 10:00 AM evidentiary hearing.   Not only was their assumption wrong, Mr. Mentzer failed to exercise due diligence as he failed to call chambers at any time on the afternoon of January 15th, failed to check the docket for the specific scheduling information, and he failed to check the Court's website (which also publicly posts at no cost the details of the Court's hearing calendar).   The end result was that Mr. Mentzer and his client arrived too late for the 10:00 AM evidentiary hearing as it had already occurred and concluded.

The very fact that Mr. Mentzer, without a hint of contrition, building on the false assertion that he did not receive notice of the Rescheduling Order, would submit such an argument to this Court—that his failure to appear at the evidentiary hearing was due to his reliance upon incomplete information provided by the CSO's and incomplete information provided by opposing counsel to his client, coupled with an incorrect guess as to the time of the hearing—speaks volumes, because it is the attorney's duty to keep himself or

herself abreast of the docket. <u>See</u> <u>Universal Film Exchanges, Inc. v. Lust</u>, 479

F.2d 573, 576 (4th Cir. 1973) (attorney's reliance on other parties to the action

to keep him informed as to the progress of the case is not excusable neglect

under Rule 60(b)(1)).  It also speaks volumes because the real reason why Mr.

Mentzer missed the hearing is his professional laziness in these proceedings.

Mr. Mentzer's May 22, 2015 supplemental brief finally acknowledges as much

as counsel stated: "I admit when I could not get into the Bankruptcy system I

should have called, but I hate phone calls and delayed."  (Plaintiff's Brief, p. 5,

Adv. No. 13-07023, Doc. No. 66).

       To put it mildly, this record reflects that there is no merit to any

argument premised on Mr. Mentzer's purported lack of notice as to the date

and time of the evidentiary hearing.  The words of our District Court apply

here:

> In this technological age, the days of claiming "the dog ate my
> homework" are well over.  "Parties have an obligation to monitor
> the court's docket to inform themselves as to the entry of orders" . .
> . "Failure to receive electronic notice of the entry of orders is not an
> acceptable [excuse]" for a lack of compliance. . . . "[I]mperfect
> technology may make a better scapegoat than the family dog," but
> "counsel's effort at explanation, even taken at face value, is plainly
> unacceptable."

<u>Countrywide Home Loans, Inc. v. Commonwealth Land Title Ins. Co.</u>, C.A. No.

08-27, 2009 U.S. Dist. LEXIS 22364, *5 (W.D. Pa. Mar. 16, 2009)(citations to

quoted sources omitted).

Taken in totality, Mr. Mentzer's conduct reflects a highly disturbing pattern and substantial volume of inexcusable neglect, compelling a disciplinary response by this Court.   Mr. Mentzer's conduct (a) violates his duty of candor to this Court, (b) violates his duty of competence and diligence to his client, and (c) his argument as to lack of notice violates Fed.R.Bankr.P. 9011.  While this Memorandum Opinion should be deemed a formal reprimand of Mr. Mentzer, the Court does have reason to believe that a reprimand alone will not be of sufficient deterring influence upon Mr. Mentzer.   In addition to the Rules of Professional Conduct that Mr. Mentzer is charged with following, the Court has instructed him concerning his conduct both orally on the record and in writing by various corrective entries in the docket - seemingly to no avail.  Mr. Mentzer appears to instead create his own set of rules.

Having found that Mr. Mentzer's conduct warrants a sanction, and having concluded that there is no less severe sanction than a monetary sanction against Mr. Mentzer that would be a sufficiently effective deterrent, the Court shall issue an Order to Show Cause why Mr. Mentzer should not be sanctioned to pay a civil monetary fine.   See Republic of Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 74 (3d Cir. 1994) (setting forth the two step analysis for imposing sanctions); accord Theokary v. Abbatiello (In re Theokary), 468 B.R. 729, 745 (Bankr. E.D. Pa. 2012) (noting that the Republic of Philippines "framework applies, regardless of whether the court is acting under either the rules of court, such as Fed. R. Civ. P. 11 (or Fed. R. Bankr. P.

9011) or pursuant to its inherent power"). The Order to Show Cause shall afford Mr. Mentzer an opportunity to respond and be heard regarding the imposition of monetary sanctions. See Chambers v. NASCO, Inc., 501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991).

Of course, the Court is mindful of the costs incurred by Mr. Lalone in association with Mr. Mentzer's failure to attend the January 16, 2015 evidentiary hearing. Accordingly, Mr. Lalone shall be afforded an opportunity to file a motion seeking to recover the legal fees that he incurred in connection with Mr. Mentzer's failure to attend the January 16, 2015 evidentiary hearing, including the legal fees associated with responding to Mr. Mentzer's Motion for Relief. Any motion filed by Mr. Lalone is permissive in nature, and is not mandatory. To the extent any such motion is filed by Mr. Lalone seeking sanctions payable to him, such a motion should (a) be supported by an itemized and detailed accounting of such fees, and (b) set forth the legal and factual grounds for the relief requested, and explain why the "American Rule" relating to payment of attorney's fees does not apply to this matter. If timely filed by Mr. Lalone, a motion for sanctions will be heard concurrently with the hearing on Court's Order to Show Cause. Under no circumstances will Mr. Mentzer be permitted to pass on any sanctions, directly or indirectly, to his client, Ms. Moore.

**The meritoriousness of the claim or defense**

For purposes of this <u>Poulis</u> factor, a claim is meritorious when the allegations of the pleadings, if established at trial, would support recovery by the plaintiff.  <u>See</u> <u>Briscoe</u>, 538 F.3d at 263; <u>Poulis</u>, 747 F.2d at 869-70.

In advocating for the return of Ms. Moore's personal property, Mr. Mentzer states that the Complaint was filed pursuant to 11 U.S.C. § 522(g)(1), which when read in conjunction with 11 U.S.C. § 522(h) gives individual consumer debtor's standing to pursue avoidance of preferential pre-petition involuntary transfers of exempt property.[21]

Given the broad definition of "transfer" in section 101(50), the Court can conclude that there may very well have been a transfer under the Code as Mr. Lalone obtained a judgment and possession of property belonging to Ms. Moore during the preference period.  <u>See</u> <u>Hoffman v. Central Pa. Nat'l Bank (In re</u>

---

[21] Section 522(g) states, in pertinent part:

> [T]he debtor may exempt under subsection (b) . . . property that the trustee recovers under section 510(c)((2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under subsection (b) . . . if such property had not been transferred, if—
>> (1)(A) such transfer was not a voluntary transfer of such property by the debtor and
>>    (B) the debtor did not conceal such property; or
>> (2) the debtor could have avoided such transfer under subsection (f)(1)(B) of this section.

Section 522(h) states, in pertinent part:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) . . . if the trustee had avoided such transfer, if —
>> (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549 or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
>> (2) the trustee does not attempt to avoid such transfer.

Hoffman), 96 B.R. 46, 47 (Bankr. W.D. Pa. 1988) (noting that transfer "means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with any interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption . . . .").

One of the issues germane to this lawsuit is whether the "transfer" at issue was voluntary.  Mr. Mentzer alleges that personal property at issue was not voluntarily transferred by Ms. Moore to Mr. Lalone.  The Court finds there to be a plausible argument that the transfer was not voluntary.  For example, a transfer made by a debtor where the landlord "had terminated the debtor's lease, filed a landlord-tenant action against her, taken a judgment pursuant to the landlord-tenant action and caused a writ of possession to be issued" was found to be an involuntary transfer because "the immediate cause of the transfers was the legal compulsion of the eviction action rather than the exercise of the debtor's free will." Ross v. Philadelphia Hous. Auth. (In re Ross), Adv. No. 97-0063, 1997 WL 331830, at *3 (Bankr. E.D. Pa. June 10, 1997).  As an involuntary transfer, section 522(g) would exempt the property and Ms. Moore would have standing to avoid the preference under section 522(h).

In reading the Complaint in a light most favorable to the movant, the Court concludes that there is a plausible basis for relief under section 522 based on the limited record before it.  For purposes of the present Poulis factor,

the Court finds this is sufficient support for the meritoriousness of Ms. Moore's Complaint, thereby weighing in favor of setting aside the Dismissal Order.

Additionally, the Court is aware that both parties refer to their respective rights under the Pennsylvania Landlord-Tenant Act ("PLTA"), 68 P.S. §250.101, *et. seq.* The PLTA sets forth procedural requirements that a landlord is obligated to follow with respect to, among other things, the disposal of a tenant's personal property.[22] There appears to be a factual dispute as to whether Ms. Moore made a timely request for the return of the property.[23] For purposes of the present <u>Poulis</u> factor, the Court finds that, viewing the competing facts in the light most favorable to Ms. Moore as the movant, the PLTA offers plausible support for the meritoriousness of Ms. Moore's Complaint, thereby again weighing in favor of setting aside the Dismissal Order.

Lastly, under the undisputed facts of the matter *sub judice*, Mr. Lalone's claim for payment arose pre-petition. Mr. Lalone was identified in Ms. Moore's petition and he was included in the creditor mailing matrix. There also is no

---

[22] For example, 68 P.S. § 250.401 sets forth an appraisement requirement and a three hundred dollar ($300) exemption; section 250.402 exempts clothing; sections 250.505a(d) and 505a(e) set forth specific notice requirements, section 505a(f) imposes a limitation on disposal absent consent; and section 505a(i) provides for treble damages, reasonable attorney fees and court costs upon the violation of the PLTA.

[23] On May 22, 2015, Mr. Lalone filed a Brief addressing the meritoriousness of Ms. Moore's claim under the PLTA. (Adv. No. 13-07023, Doc. No. 65). On May 29, 2015, Ms. Moore filed a Brief in Response. (Adv. No. 13-07023, Doc. No. 67). Ms. Moore contends that she made repeated attempts to recover her property within ten days of her eviction. (Plaintiff's Response Brief, p. 1). Mr. Lalone contends that no such contact was made, and that he was therefore entitled to dispose of the property pursuant to the PLTA. (Defendant's Brief, p. 2).

dispute that Mr. Lalone received actual notice of Ms. Moore's bankruptcy. Despite such notice, Mr. Lalone acknowledged at trial that he disposed of Ms. Moore's property without leave of the Court.  This is important as Mr. Lalone may very well have violated the automatic stay in bankruptcy if, and to the extent, the personal property at issue was property of the Debtor from and after the petition date.

The automatic stay under 11 U.S.C. § 362(a) "is one of the fundamental debtor protections provided by bankruptcy laws" and was triggered when the Debtor filed the bankruptcy petition on March 1, 2013.  <u>Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)</u>, 607 F.3d 114, 122 (3d Cir. 2010).

Section 362 provides that "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case . . ." outside the course of the bankruptcy proceeding is stayed during the bankruptcy case. 11 U.S.C. § 362(a)(6).

The Bankruptcy Code further provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. §362(k)(1).  <u>See</u> <u>Lansaw v. Zokaites (In re Lansaw)</u>, Adv. No. 13-2037, 2015 Bankr. LEXIS 106 (Bankr. W.D. Pa. Jan. 14, 2015) (discussing punitive damages in the context of a landlord's violation of the automatic stay).

Even where a landlord was acting pursuant to a judgment, the post-petition disposal of the debtor's property in satisfaction of rent arrears has been found to constitute a willful violation of the automatic stay. See In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482, 485 (E.D. Pa. 1989) (affirming the bankruptcy court's award of punitive damages based on the landlord's conduct). Having received notice of the automatic stay, it is not relevant whether Mr. Lalone understood the legal ramifications of § 362. See Hartman v. PMF Rentals (In re Hartman), C.A. No. 03-337, 2004 U.S. Dist. LEXIS 5691, *13-14 (W.D. Pa. Mar. 22, 2004)(citing In re Bragg, 56 B.R. 46, 49 (Bankr. M.D. Ala. 1985)(ignorance of the law does not excuse a violation of § 362). Moreover, "[a] party's good faith (albeit, mistaken) belief that it has a right to the property in question or that its conduct is exempt from the stay is irrelevant." Id. (citing In re University Med. Ctr., 973 F.2d 1065, 1088 (3d Cir. 1992)).

The record reflects that Mr. Lalone testified that he disposed of most of Ms. Moore's property by January 16, 2015, and that he began to dispose of the property in June or July of 2013. (Audio Recording of the January 16, 2015 Hearing at 10:00 AM). Accordingly, Mr. Lalone does not contest that he engaged in the post-petition disposal of the property. Mr. Lalone, however, maintained that he was entitled to do so based upon his having complied with the PLTA, as noted above. The only legal authority presented by Mr. Lalone in support of his claim that PLTA compliance precludes a finding that he violated the automatic stay is Dollar Rons II, LLC v. Dorado Investors Assocs., LLC (In

re Dollar Rons II, LLC), Adv. No. 07-01783, 2008 Bankr. LEXIS 1205, *6-7 (Bankr. D.N.J. Apr. 11, 2008).

However, the Court is not in a position to conclude that, as a matter of law, Dollar Rons II, LLC established that Mr. Lalone did not violate the automatic stay.  There are three potential grounds for distinguishing In re Dollar Rons II, LLC from the situation involving Ms. Moore and Mr. Lalone.[24] First, the landlord-tenant relationship in Dollar Rons II, LLC was governed by New Jersey law and not Pennsylvania law.  Second, the disposal of the property in Dollar Rons II, LLC was addressed by the terms of the lease between the landlord and tenant.  Third, the lease involved in Dollar Rons II, LLC, was a commercial lease, and not a residential lease.  This third distinguishing point is important because, unlike Ms. Moore, the debtor in Dollar Rons, II, LLC had no rights under 11 U.S.C. §§ 522(g) and 522(h).  Thus, the Court is not convinced that Dollar Rons, II, LLC can save the Defendant from liability in this case.

As such, for purposes of the present Poulis factor, the Court finds that In re Dollar Rons II, LLC appears to be inapplicable to the facts at hand and is insufficient to preclude the plausibility of a claim that Mr. Lalone violated the automatic stay.  Accordingly, consideration of the possible violation of the

---

[24] Indeed, even the New Jersey Bankruptcy Court has recognized distinguishable facts of In re Dollar Rons II, LLC in declining to apply it in the case of In re Hyeon Seok Shin, Case No. 12-18146, 2012 Bankr. LEXIS 3952, *12-13 (Bankr. D.N.J. Aug. 23, 2012) ("[In re Dollar Rons II, LLC] is inapplicable for three reasons: first, the debtor apparently made no effort to recover the property within the contractual period; second, the court assumed that the contractual period expired before the debtor was locked out; and, third, the debtor filed its petition months after the period expired.)

automatic stay, viewed in the light most favorable to Ms. Moore as the movant, weighs in favor of setting aside the Dismissal Order.

## III.

Having conducted a *de novo* review of this matter pursuant to each of the six Poulis factors, the Court recognizes that there are no rigid guidelines for balancing these factors.  See Briscoe, 538 F.3d at 263 (citing Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992) (there is no "magic formula" or "mechanical calculation").

Given that there is no clear record evidence establishing that Ms. Moore was personally responsible for Mr. Mentzer's derelictions, and given that Poulis presents an exception to the Link Rule, the Court considers the first Poulis factor as neutral.  The Court acknowledges the prejudicial nature of the fact that Mr. Lalone incurred additional legal costs as a result of Mr. Mentzer's failure to attend the trial of this matter.  Accordingly, the second Poulis factor weighs against setting aside the Dismissal Order.  However, Mr. Lalone has an opportunity to move for sanctions against Mr. Mentzer to recover reasonable costs, and, as such, this factor does not weigh greatly in favor of maintaining the *status quo*.

Given the history of Mr. Mentzer's dilatoriness, the third Poulis factor weighs against setting aside the Dismissal Order.  Finding that Mr. Mentzer's derelictions were reflective of negligence and incompetence rather than being contrived or tactical in purpose or effect, the Court finds that the fourth Poulis

factor is neutral.  In recognition of the fact that alternative sanctions should be considered, the fifth <u>Poulis</u> factor weighs heavily in favor of setting aside the Dismissal Order.  Moreover, in addition to reprimanding Mr. Mentzer for his numerous derelictions, the Order to Show Cause, in keeping with <u>Poulis</u>, shifts the brunt of the sanction from Ms. Moore to Mr. Mentzer.

Lastly, there being a plausible basis for Ms. Moore obtaining recovery under the Bankruptcy Code and under the Pennsylvania Landlord-Tenant Act, the sixth <u>Poulis</u> factor weighs in favor of setting aside the Dismissal Order.

As a result of the foregoing <u>Poulis</u> analysis, and out of deference to the Third Circuit's preference of having the opposing parties fully litigate their disputes on the merits, this Court shall issue contemporaneously with this Memorandum Opinion an Order vacating the Dismissal Order and scheduling an evidentiary hearing.

Additionally, consistent with the Third Circuit's directive that the Court consider alternative sanctions other than dismissal, the Court shall separately issue an Order to Show Cause for the purpose of allowing Mr. Mentzer to be heard as to why he should not be subject to monetary sanctions as a result of his acts and omissions.  In this regard, Mr. Lalone may (but is not required) to file a motion seeking to have Mr. Mentzer sanctioned in the form of reimbursement for the legal fees Mr. Lalone incurred as a result of Mr. Mentzer's failure to attend the January 16, 2015 evidentiary hearing and for having to respond to the present Motion for Relief.

Appropriate orders shall follow.


Dated: <u>June 30, 2015</u>

_____
JEFFERY A. DELLER
Chief U.S. Bankruptcy Judge


Case administrator to serve:

Paul H. Mentzer, Esq.
Timothy J. Sloan, Esq.
Eric E. Bononi, Esq.
Office of the U. S. Trustee

FILED
6/30/15 3:25 pm
CLERK
U.S. BANKRUPTCY
COURT - PGH

00016039